IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 12, 2025

## JOHN PATRICK TRACY, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2014-A-866      Jennifer Smith, Judge**

_____

### No. M2024-00344-CCA-R3-PC

_____

The Petitioner, John Patrick Tracy, Jr., pleaded guilty to one count of aggravated sexual battery and two counts of attempted aggravated sexual battery, and the trial court imposed the agreed upon effective sentence of fifteen years in the Tennessee Department of Correction, followed by an additional fifteen years to be served on Community Corrections.  The Petitioner filed a petition for post-conviction relief, claiming that he had received the ineffective assistance of counsel at trial and that his guilty pleas were not voluntary.  After a hearing, the post-conviction court denied relief.  On appeal, the Petitioner maintains that he received the ineffective assistance of counsel because his attorney failed to file essential motions, failed to investigate, and misrepresented his legal experience.  He also argues that his guilty pleas were unknowingly and involuntarily entered.  He further contends that the cumulative effect of his attorney's errors entitles him to relief.  After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JEFFREY USMAN, JJ., joined.

Jay Umerley, Nashville, Tennessee, for the appellant, John Patrick Tracy, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Rejul Bejoy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

In March of 2014, a Davidson County grand jury indicted the Petitioner for six counts of aggravated sexual battery, seven counts of rape of a child, and eight counts of especially aggravated sexual exploitation of a minor (case number 2014-A-866). While these charges were still pending, a grand jury indicted the Petitioner for seven counts of sexual exploitation of a minor (case number 2016-D-2084).

## A. Guilty Plea Hearing

On April 26, 2019, the Petitioner agreed to plead guilty, in case number 2014-A-866, to one count of aggravated sexual battery and two counts of attempted aggravated sexual battery in exchange for an effective fifteen-year sentence in the Tennessee Department of Correction, to be followed by a fifteen-year sentence on Community Corrections. As part of the plea agreement, the State agreed to dismiss the charges in case number 2016-D-2084. At the guilty plea hearing, the trial court ensured the Petitioner understood his constitutional rights and the consequences of a guilty plea. The Petitioner stated that he acquired his GED before joining the military. He confirmed that he could read and write and understood the plea agreement. The Petitioner testified that he was not on any medication or suffering from any ailment or substance that might affect his decision to enter a guilty plea.

The trial court then reviewed with the Petitioner each of his charges. The Petitioner confirmed that, after discussion with his attorney ("Counsel"), he believed he had a good understanding of the charges and the possible penalties. The Petitioner reviewed the plea agreement with Counsel and voluntarily signed the agreement. The Petitioner stated that he was satisfied with Counsel's representation and confirmed that Counsel had answered any questions the Petitioner had about the plea agreement. The State announced the plea agreement, which included dismissal of the other counts in the indictment and in case 2016-D-2084. The Petitioner confirmed that the plea agreement announced by the State was the result of negotiations between Counsel and the State and that he understood the agreement.

The State offered the following factual basis in support of the trial court's acceptance of the plea agreement:

> [T]he State's proof would have shown on August 6 of 2013, the victim in this matter, [ ], disclosed the sexual abuse from an individual that she named [the Petitioner]. She received a forensic interview where she described sexual abuse that had been occurring dating back to August of 2012. Upon her disclosure that photographs of her had been taken while she was nude[,] [a] search warrant was conducted on [the Petitioner]'s home. That search warrant was conducted on August the 22nd of 2013. Upon that search warrant, a phone from [the Petitioner], an iPhone 4, was taken, and upon a

2

forensic digital analysis, Chad Gish . . . , the detective, was able to determine and find eight photographs that were from that phone with an email address of [redacted], and received by the same email of [redacted]. Those pictures depicted the victim in this matter [ ]. She would testify that those pictures were taken with an iPhone 4 and that was her in those pictures. Those pictures also depicted [the Petitioner] touching [the victim] in her genital area.

The Petitioner agreed that, were the case to go to trial, the State would be able to present evidence and witnesses to show those facts. The Petitioner entered a guilty plea to one count of aggravated sexual battery and two counts of attempted aggravated sexual battery.

## B. Post-Conviction Hearing

The Petitioner filed a post-conviction petition alleging that Counsel was ineffective. At the hearing, two witnesses testified: the Petitioner and Counsel. Counsel testified about his experience with criminal trials. He stated that he had practiced law for approximately fifteen years with his primary area of practice being criminal law. He began working in Williamson County and then became a "traveling public defender" in the 21st Judicial District, covering multiple counties. He agreed that he handled fewer than five criminal court cases in Davidson County but worked in Lewis, Perry, Maury, Sumner and Robertson counties as well. His first criminal trial was a Perry County rape of a child case in 2007. He could not say how many felony criminal trials he had handled between 2007 and 2020, but he estimated fewer than ten.

Counsel testified that he did not file a motion for discovery in this case. He explained that cases are handled differently in various counties. For the Petitioner's case, he approached the prosecutor and asked if the State would provide the discovery or if he should file a motion. The prosecutor elected to provide Counsel with all the discovery in the case. Counsel forwarded all discovery to the Petitioner, and then they discussed it. Counsel stated that, because the prosecutor provided him with the discovery, there was no need to file the motion.

Counsel testified that he did not file a bill of particulars in this case. He identified the twenty-one-count indictment that resulted in a plea agreement with the State. The indictment alleged that the charged conduct occurred over a two-year period of time. Counsel discussed with the Petitioner the possibility of filing a bill of particulars, but after meeting with the State and further discussion with the Petitioner, he decided not to file a bill of particulars. Counsel explained that forensic evidence involving electronic files was a significant part of the discovery and that he had reviewed the electronic files multiple times. From the electronic files, he developed a sufficient time frame. He discussed this

3

at length with the Petitioner, and Counsel felt satisfied that a bill of particulars was not necessary in this case.

Counsel testified about the State's motion to admit forensic interviews of the victim. Counsel never requested a hearing on the admissibility of the interviews because he believed he could use the interviews to impeach the victim. Further, the result of one of the interviews was that the claims were unfounded.

Counsel recalled that he provided the Petitioner with a list of private investigators, but the Petitioner indicated that he did not have funds to hire one. Counsel did not file an indigency motion with the trial court requesting funding for an expert because he believed the physical evidence in this case was strong. Counsel believed that the better course was to challenge the State's expert on cross-examination.

Counsel agreed that the only motion he filed in this case was a bond motion. Counsel agreed that he did not employ an independent defense investigation of the State's cell phone evidence. Counsel believed a cell phone expert would have been "an exercise in futility" because the Petitioner emailed incriminating images from his cell phone to his email address. The images were found in both locations.

Counsel testified that he discussed the possible penalties for the charged offenses "[e]xtensively" with the Petitioner. Counsel stated that he never had any question that the Petitioner understood the penalties for each of the crimes charged as was reflected in the transcript of the plea hearing.

On cross-examination, Counsel testified that although his first jury trial on a rape of a child charge was in 2007, he had worked on "[m]any" similar cases by the time he represented the Petitioner in 2013. In investigating this case, Counsel spoke with several of the witnesses listed on the indictment and met with the Petitioner "[a]t least a hundred times." The Petitioner asked Counsel to provide the State with communication between him and the victim's mother. Counsel explained:

> [I]t was [the Petitioner's] theory that if he could show all these messages between the [victim's mother] and him to the State that the [victim's mother] would somehow come off as uncredible and that that would sink the case. He had first hoped that by talking to [the victim's mother] he could convince her to make [the charges] go away. Upon that failing, it was his hope then that this would show [the victim's mother] as being untrustworthy.

According to Counsel, this communication was problematic because the Petitioner had continued contact with the victim's mother and the victim after the charges were filed and

4

after the Department of Children's Services investigation had begun. During the bond hearing, it was revealed that the Petitioner had even met with the victim and her mother in a parking lot.

Counsel testified that there was a 2014 indictment (case number 2014-A-866) charging the Petitioner with multiple counts of aggravated sexual battery, rape of a child and especially aggravated sexual exploitation of a minor. After the State learned of the Petitioner's contact with the victim's mother, a search warrant was obtained and a subsequent search of the Petitioner's phone revealed "hundreds of images of child pornography." These images were the basis of the 2016 indictment (case number 2016-D-2084) for seven counts of sexual exploitation of a minor, one hundred images or more. As part of the plea agreement, the State dismissed the 2016 charges related to the images.

Counsel confirmed that, in addition to the forensic interviews, the State's evidence against the Petitioner also included "graphic" images of the victim recovered from the Petitioner's cell phone and email account. As a result of Counsel's lengthy negotiations with the State, the Petitioner pleaded guilty to three counts of the twenty-one-count 2014 indictment in exchange for an out-of-range sentence of fifteen years for the aggravated sexual battery conviction and a consecutive fifteen years to be served on Community Corrections for the two attempted aggravated sexual battery convictions. The Petitioner agreed to the fifteen-year out-of-range sentence because, had he proceeded to trial, he would have been subject to much stronger penalties on the twenty-one charges.

When asked about whether Counsel had any indication that the Petitioner had a hearing issue at the time of the guilty plea hearing in April 2019, Counsel responded:

> No. He responded in open court to everything that was said to him. We had a back-and-forth back there. He never said he couldn't hear. He never asked me to speak up. I may have asked him not to be so loud a couple times. But there was never a claim [about the Petitioner's hearing] or an issue at that time.

Counsel recounted his common practice with his clients to ensure they understood the guilty plea by reviewing each paragraph of the agreement. Counsel stated that there "was no question" that the Petitioner understood the agreement on the day he pleaded guilty.

The Petitioner testified that he was seventy-two years old. In relation to his background, the Petitioner explained that he had "a high school diploma, a high school GED, approximately a year of college at a community college at the Air Force where [he] spent 21 years active duty military." He had no experience with the criminal justice system until he was charged in this case. The Petitioner stated that he pleaded guilty because

Counsel told him that if he did not plead guilty, he would lose at trial and be ordered to serve a minimum of twenty-five years.

The Petitioner recalled that he initially hired Counsel to represent him at an order of protection hearing. After his arrest in 2013, the Petitioner's brother hired Counsel to represent the Petitioner in this case. The Petitioner recounted the events leading up to his plea agreement:

> The afternoon or the evening before he had come down to Hill Detention Center where I was being held and told me they had worked out a plea deal for one Class B felony, 8 to 12 years. . . . Once [Counsel] showed me the plea deal, I physically threw it at him in the holding room back there. . . . That was not what we agreed to. . . . We argued for approximately 20 minutes back and forth. He came out and talked to the district attorney. He come back. My daughter had to call him out because of something that was being said by the district attorney. He came back. A court clerk came back and says you've got five minutes to be in the courtroom; if you do not have the plea deal worked out by then, we go to trial Monday morning.

The Petitioner insisted that he only pleaded guilty because Counsel told him he would lose the case and face a minimum of twenty-five years.

The Petitioner testified that the only motion he requested Counsel file was the motion for bond reduction. About the discovery in this case, the Petitioner stated that Counsel never provided him with any of the State's discovery.

The Petitioner testified that Counsel tried to get the Petitioner to hire a forensic expert on iPhones. Counsel provided the Petitioner with the name of an expert; however, when the Petitioner contacted the expert, that individual did not know what an iPhone was. The Petitioner explained that he wanted a forensic expert because the police kept changing the date on which they alleged he took the photographs found on his cell phone and his computer related to his charges in case number 2016-D-2084.

The Petitioner testified that he identified witnesses he wanted Counsel to interview, and Counsel never spoke with those witnesses. The Petitioner wanted Counsel to speak to Richard Ally, who was deceased at the time of the post-conviction hearing. He said that Mr. Ally was the Petitioner's Sunday school teacher from 1993 to 2013 and also was a friend. The Petitioner also wanted Counsel to interview Judy Hunt, the victim's Sunday school teacher, and Heidi Penny, a friend to both the Petitioner and the victim. Further, he wanted Counsel to speak with two church leaders who the Petitioner had worked with on different church programs. Finally, he wanted Counsel to speak with the victim.

The Petitioner described his relationship with the victim's mother as "[n]on-sexual companions." The Petitioner continued contact with the victim's mother throughout most of the pendency of this case and ceased contact with the victim's mother in January 2016. The Petitioner stated that he did not know if Counsel ever interviewed the victim's mother.

When asked what he would have liked Counsel to do for him that had not been done, the Petitioner reiterated that Counsel did not provide or review discovery with him. Further, he wanted Counsel to talk with Barbara Tallent, the interviewer in the second forensic interview. According to the Petitioner, Ms. Tallent gave the victim two box seat tickets to a Taylor Swift concert.

The Petitioner testified that Counsel did nothing to advocate for exclusion of the two forensic interviews. When asked if he was confident in Counsel as an attorney, he responded, "[n]ow, no."

On cross-examination, the Petitioner testified that he had worn hearing aids since 2009. He confirmed that he and two of his daughters told Counsel that the Petitioner wore hearing aids. The Petitioner agreed that Counsel explained the plea agreement to him, but he testified that the agreement he ultimately pled to was not "the original plea deal." He maintained that he pleaded guilty because he "had no choice." The Petitioner agreed that a medical professional was deposed in this case on April 22, 2019, and he was provided with the transcript on that same day.

The State called Counsel as a rebuttal witness. When asked if he provided discovery to the Petitioner, Counsel responded, "[u]nequivocally, yes." Counsel provided an email showing that he emailed the Petitioner 226 pages of discovery on September 4, 2014.

After hearing the evidence, the post-conviction court issued a written order denying relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

On appeal, the Petitioner asserts that he received the ineffective assistance of counsel because Counsel's failure to file essential motions, failure to investigate, and misrepresentation of his legal experience rendered his guilty plea unknowing and involuntary. The Petitioner argues that the cumulative effect of Counsel's errors warrants relief.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional

right.  T.C.A. § 40-30-103 (2018).  The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018).  Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts.  *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)).  A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings.  *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001).  A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness.  *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution.  *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).  The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment.  Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.  Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases.  *Baxter*, 523 S.W.2d at 936.  To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness."  *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

### A. Ineffective Assistance of Counsel

The Petitioner argues that Counsel's failure to file essential motions, failure to investigate, and misrepresentation of his legal experience rendered his guilty pleas unknowing and involuntary.

In its order denying relief, the post-conviction court found:

> [The] Petitioner failed to establish that [Counsel]'s performance was ineffective, and that his performance affected the outcome of the plea process. The Court finds that [C]ounsel's representation fell within an objective standard of reasonableness under prevailing professional norms. The Court specifically credits the testimony of [Counsel] offered at the post-conviction hearing. Counsel was an experienced criminal defense attorney at the time he was retained to represent the Petitioner. He communicated extensively with the Petitioner and discussed his options at length. [Counsel] provided Petitioner with discovery, interviewed witnesses, and filed a bond reduction motion. Despite his view that the evidence was overwhelming and, in view of early plea discussions, that the case would likely be settled, [Counsel] continued to prepare for trial, deposing a medical professional days before the plea proceeding. He did not intend to object to the introduction of the forensic interviews at trial for tactical reasons, as he believed they would be helpful impeachment evidence. While Petitioner might disagree with [C]ounsel's strategy in hindsight, the Court finds that [C]ounsel performed within the range of competence demanded of attorneys in criminal cases in the lead-up to a potential trial.

The Petitioner argues that Counsel failed to file a motion for discovery and a request for a bill of particulars. As indicated above, Counsel orally requested the discovery material and was aware of all the material in the State's file and shared the discovery materials with the Petitioner. Thus, it is readily apparent that a discovery motion would have served no useful purpose. As to the request for a bill of particulars, we agree with the post-conviction court and conclude that the Petitioner has failed to establish deficient performance by trial counsel or prejudice to his case based on the failure to request a bill of particulars. Counsel testified at the post-conviction hearing that a bill of particulars was not necessary because the time frame was narrowed down by his thorough review of the electronic record in this case. Based upon this, he was prepared to defend the charges against the Petitioner in the indictment.

In addition, the Petitioner has failed to show how a bill of particulars would have aided his defense any more than the timeline that Counsel developed through the electronic evidence and forensic interviews. *See Pearson v. State*, No. M2015-01159-CCA-R3-PC, 2016 WL 2779229, at *13 (Tenn. Crim. App. May 13, 2016) (affirming denial of post-conviction relief where petitioner failed to provide evidence of what a bill of particulars would have revealed outside his own speculation), *perm. app. denied* (Tenn. Oct. 19, 2016). Thus, we conclude that Counsel was not deficient in this respect.

10

Next, the Petitioner asserts that Counsel failed to adequately investigate his case because he failed to interview key witnesses and did not hire an investigator or experts. We note that the Petitioner did not present any testimony from the key witnesses or experts at the post-conviction hearing. Because the Petitioner did not present any of these potential witnesses at the post-conviction hearing, the Petitioner cannot show prejudice. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither the trial court nor this court can "speculate or guess" about the potential testimony of these witnesses and how their testimony would have affected the outcome of the Petitioner's case. *See id*. Moreover, the Petitioner does not offer any explanation of what Counsel should have hired an investigator to do or how an investigator would have benefited his defense. Therefore, the Petitioner failed to establish by clear and convincing evidence that Counsel's decision regarding witnesses was deficient or caused the Petitioner prejudice.

Finally, the Petitioner asserts that Counsel misrepresented his legal experience. The Petitioner claims that Counsel "assured [the Petitioner] that he had handled similar cases in the past, creating a false sense of security for [the Petitioner] in Trial Counsel's capabilities." Counsel testified that he had practiced law for fifteen years and represented clients in "many" rape of a child cases. Counsel recalled having told the Petitioner that he had handled child rape cases before but "never would have guaranteed a result or anything like that." The post-conviction court found that, at the time of representation, Counsel was an "experienced criminal defense attorney" who "performed within the range of competence demanded of attorneys in criminal cases in the lead-up to a potential trial." The evidence does not preponderate against the post-conviction court's finding that Counsel was an experienced criminal defense attorney. Counsel practiced in numerous counties and had handled child sex abuse cases. Therefore, the Petitioner has failed to show that Counsel was deficient in this respect.

Accordingly, we conclude that the Petitioner has failed to establish deficient performance or prejudice, and he is not entitled to relief.

## B. Involuntary Plea

Next, the Petitioner argues that his guilty pleas were not knowingly or voluntarily entered because of his hearing impairment and Counsel's coercion. The State responds that the Petitioner significantly benefited from the plea agreement and has not shown that this choice was involuntary. In the order denying relief, the post-conviction court found:

> There was no dispute at the hearing that the Petitioner wanted to plead guilty. The parties agree that the day before the plea proceeding, Petitioner and his counsel discussed the state's plea offer and were satisfied with the

terms. The crux of the issue lies in Petitioner's assertion now that those terms had been altered when he reviewed the petition the following day.

. . . .

Petitioner testified that he had a high school diploma, attended college for a short time, and served in the Air Force for twenty-one years. Before this case, he had no prior interactions with the criminal justice system. At the time of the plea, he was charged with seven Class A felonies and fourteen Class B felonies in Case Number 2014-A-866 and seven Class B felonies in Case Number 2016-D-2084. If convicted of any of these offenses, he faced a significant prison sentence. This was explained to him both by [Counsel] before trial and the Court during the plea colloquy, at which time the Petitioner indicated that he understood the charges against him and the possible penalties.

When confronted at the post-conviction hearing with the fact that he faced a potential twenty-five year sentence had he gone to trial, Petitioner testified that he "had no choice" but to plead guilty. In the Court's view, Petitioner's response only confirms he understood that pleading guilty guaranteed avoidance of a greater penalty—an entirely reasonable and wholly common reason for negotiating a criminal case disposition. Indeed, the Court of Criminal Appeals has observed, "the statement, 'I have no choice,' may result from awareness of the undesirable aspects of going to trial. The response may well mean that, after considering the options before him, the petitioner concluded that the only intelligent choice was to plead guilty." *Hicks v. State*, 983 S.W.2d 240, 248 (Tenn. Crim. App. 1998). Moreover, the Petitioner presented no witnesses or other proof that he could have successfully defended the case at trial had counsel performed in any other way. Petitioner was aware of his right to a trial and knew that he would go to trial if an agreement was not reached on the day of his plea. He also seemed to recognize that the evidence against him was overwhelming. As discussed above, [C]ounsel communicated extensively with Petitioner and was competent in his duties as Petitioner's attorney. Under these circumstances, neither Petitioner's last-minute displeasure with the terms of the plea agreement nor his post hoc regret with how the case was resolved render his guilty plea involuntary.

At the post-conviction hearing, there was little evidence presented on the Petitioner's hearing impairment, when it began, and how it impacted the guilty plea

12

hearing. Counsel testified that he was entirely unaware of any hearing loss. His communication with the Petitioner did not support such a conclusion. Likewise, the transcripts of the guilty plea hearing and the post-conviction hearing do not reflect that the Petitioner had a hearing impairment. Further, the record demonstrates that the Petitioner pled guilty because he wanted to reduce his exposure to significantly greater prison sentences should he not prevail at trial. The Petitioner faced twenty-one counts in (case number 2014-A-866) and seven counts in (case number 2016-D-2084). The State agreed to dismiss all but three counts in case number 2014-A-866 for a fifteen-year sentence in prison, followed by fifteen years served on Community Corrections. This evidence supports the post-conviction court's finding that the Petitioner's decision to enter guilty pleas was due to the undesirable aspects of going to trial on twenty-eight counts of offenses related to child sex abuse rather than Counsel's alleged coercion. The Petitioner failed to offer any evidence at the hearing to support his assertion that, but for Counsel, he would have "insisted on going to trial." *Lockhart*, 474 U.S. at 59.

Accordingly, we conclude that the Petitioner has failed to show that he would have declined the State's offer to dismiss twenty-five of the twenty-eight charges against the Petitioner in exchange for the Petitioner's guilty plea to three charges with a fifteen-year prison sentence followed by a fifteen-year Community Corrections sentence, and, instead, insisted on going to trial. The Petitioner is not entitled to relief as to this issue.

### C. Cumulative Effect of Counsel's Errors

The Petitioner claims that the cumulative effect of Counsel's errors deprived him of effective assistance of counsel. The cumulative error doctrine requires relief when "multiple errors [are] committed in the trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010) (internal citations omitted); *see State v. Jordan*, 325 S.W.3d 1, 79 (Tenn. 2010) ("'[T]he combination of multiple errors may necessitate . . . reversal . . . even if individual errors do not require relief.'") (quoting *State v. Cribbs*, 967 S.W.2d 773, 789 (Tenn. 1998)). When considered "in the context of an ineffective assistance of counsel claim, cumulative error examines the prejudicial effect of multiple instances of deficient performance." *Harris v. State*, No. E2022-00446-CCA-R3-PC, 2022 WL 17729352, at *9 (Tenn. Crim. App. Dec. 16, 2022) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Apr. 18, 2023). "To that end, and perhaps obviously, a petitioner 'who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of counsel's errors.'" *Conaser v. State*, No. M2023-00271-CCA-R3-PC, 2024 WL 244964, at *7 (Tenn. Crim. App. Jan. 23, 2024) (quoting *Newton v. State*, No. M2016-02240-CCA-R3-PC, 2017 WL

13

5901032, at *10 (Tenn. Crim. App. Nov. 29, 2017), *perm. app. denied* (Tenn. Mar. 14, 2018)).

Because the Petitioner has not established any deficiency, he is not entitled to relief via the cumulative error doctrine. *Conaser*, 2024 WL 244964, at *7 ("In this case, the record does not reflect any deficient performance by trial counsel. As such, no cumulative error claim is possible"); *see also Martin v. State*, No. E2022-00688-CCA-R3-PC, 2023 WL 3361543, at *5 (Tenn. Crim. App. May 11, 2023) ("[C]umulative error does not apply in post-conviction cases where the petitioner has failed to show any instance of deficient performance by counsel").

## III. Conclusion

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____s/ *Robert W. Wedemeyer*_____
ROBERT W. WEDEMEYER, JUDGE

14